UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| LISA N. PLONSKY,<br><br>          Plaintiff,<br><br>vs.<br><br>LAS VEGAS METROPOLITAN POLICE DEPARTMENT, a political subdivision of the State of Nevada and the County of Clark; DOE CORRECTIONS OFFICER I, individually and in her official capacity as a correction officer employed by LVMPD at the CCDC; DOE CORRECTIONS OFFICERS II-XX, individually and in their official capacities as corrections officers employed by the LVMPD at CCDC; NAPHCARE, an Alabama Corporation, qualified to do business in the State of Nevada; DOE NURSES I through X; DOE CORRECTIONS OFFICERS I through X, inclusive; and ROE CORPORATIONS I through X, inclusive,<br><br>          Defendants. | Case No.: 2:11-cv-00026-RLH-PAL<br><br>**O R D E R**<br><br>(Motion to Dismiss–#11) |

Before the Court is Defendant NaphCare, Inc.'s **Motion to Dismiss** (#11, filed Jan. 25, 2011) based on a failure to state a claim. The Court has also considered Plaintiff Lisa N. Plonsky's Opposition (#23, filed Feb. 22, 2011), and NaphCare's Reply (#24, filed Mar. 3, 2011).

1

AO 72
(Rev. 8/82)

**BACKGROUND**

This dispute arises out of the care Plonsky received for injuries she allegedly suffered while at the Clark County Detention Center ("CCDC") and under the medical care of NaphCare, the CCDC's contracted health care provider. Plonsky was jailed at the CCDC, placed into solitary confinement, and only allowed one hour of free time each day. On December 4, 2008, a corrections officer came to Plonsky's cell to take her out for her free time. The officer noticed that there was dried tissue covering the two vents in Plonsky's cell. The officer then told Plonsky to clean off the vents. Plonsky responded that she had not put the tissue there and that she could not reach the vents. The officer told Plonsky that she did not care who put the tissue on the vents and that Plonsky would not get free time until they were cleaned. The officer then left Plonsky in her cell rather than taking her out for free time. The next day when the officer returned, she told Plonsky the same thing. Apparently not willing to lose free time twice, Plonsky stood on her toilet to reach the first vent and cleaned it off. However, she could not reach the second vent from her position on top of the toilet. The officer would not help or provide any means for Plonsky to reach the second vent and so Plonsky climbed up onto the sink and stretched across the wall to reach the higher vent. Unsurprisingly, Plonsky lost her balance and fell off of the sink landing on her face, right hand and wrist, right shoulder, and right breast.

Plonsky was transferred to University Medical Center ("UMC") for care and treatment. Her doctors discovered that she had sustained a head injury, lacerations to her face, multiple facial fractures (including fractures to the left zygomatic complex, lateral orbital wall, inferior orbital wall, zygomatic body, and orbital floor for the left blowout orbit fracture), and injuries to her right wrist, right breast, and right shoulder. In layman's terms, Plonsky broke her face and severely injured the upper right side of her body. The UMC doctors gave her three doses of morphine for the pain and other medications to alleviate other, related problems such as sinus issues due to her broken face.

/

1    The UMC doctors informed Defendants that Plonsky needed surgery to repair her
2 injuries. Defendants, however, ordered Plonsky returned to the CCDC. When discharged from
3 the hospital, Plonsky was given multiple prescriptions and Defendants were given instructions on
4 how to care for her injuries. Specifically, Plonsky's UMC doctors contacted the NaphCare Doe
5 Nurses and informed them of the care Plonsky required and told them that Plonsky needed to
6 return on December 8 and 10 for further treatment. Notwithstanding these medical directives,
7 Plonsky was returned to solitary confinement rather than any infirmary at the CCDC. Further, no
8 one at the CCDC gave her the prescribed medications (including painkillers), care (other than
9 changing the bandages), or returned her to see her doctors until December 17, a period of almost
10 two weeks. This delay increased Plonsky's pain and suffering and caused her condition to worsen,
11 thus necessitating increased medical care in the future.
12    On December 1, 2010, Plonsky filed suit in the Eighth Judicial District for the State
13 of Nevada alleging (1) violations of her Eighth and Fourteenth Amendment rights pursuant to 42
14 U.S.C. § 1983, (2) negligence, and (3) negligent hiring, retention, training, and supervision
15 (presumably pursuant to 42 U.S.C. § 1983). On January 6, Defendants removed the case to this
16 Court. Defendant NaphCare has since filed a motion to dismiss itself from this case. For the
17 reasons discussed below, the Court grants the motion in part and denies it in part.

## DISCUSSION

### I.    Legal Standard

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Factual allegations must be enough to rise

3

above the speculative level." *Twombly*, 550 U.S. at 555.  Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 129 S. Ct. at 1949 (internal citation omitted).

      In *Iqbal*, the Supreme Court recently clarified the two-step approach district courts are to apply when considering motions to dismiss.  First, a district court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Id*. at 1950.  Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Id*. at 1949.  Second, a district court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id*. at 1950.  A claim is facially plausible when the plaintiff's complaint alleges facts that allows the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 1949.  Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged—but not shown—that the pleader is entitled to relief." *Id*. (internal quotation marks omitted).  When the claims in a complaint have not crossed the line from conceivable to plausible, the complaint must be dismissed. *Twombly*, 550 U.S. at 570.  In sum, a complaint must contain either direct or inferential allegations concerning "all the material elements necessary to sustain recovery under *some* viable legal theory." *Twombly*, 550 U.S. at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1106 (7th Cir. 1989) (emphasis in original)).

**II.     Analysis**

      NaphCare claims that the Court must dismiss it from this action because Plonsky filed her case outside of the statute of imitations for medical malpractice cases and without the required medical affidavit.  Further, NaphCare claims that Plonsky has failed to assert a claim under the Eighth Amendment because she was a pretrial detainee, not a post-conviction detainee, and because Plonsky does not sufficiently plead a pattern, practice, or policy violating her rights.  The Court will address these issues in turn.

\

### A. Malpractice Standards

NaphCare's contention that Plonsky's first and third claims fail because she filed them outside of the statute of limitations period for medical malpractice claims and without the required medical affidavit is fundamentally flawed and fails. This is not a medical malpractice case, but a civil rights case brought pursuant to 42 U.S.C. § 1983. Plonsky does not allege medical malpractice, which has a specific legal standard, but deliberate indifference to serious medical needs negligent hiring, retention, training, and supervision as to constitutional rights. *See Estelle v. Gamble*, 429 U.S. 97, 104–06 (1976) (holding that mere medical malpractice is not a constitutional violation, instead state actors violate the Constitution where they demonstrate a "deliberate indifference to serious medical needs.") Accordingly, the Court refuses to apply the medical malpractice statute of limitations or the requirement for a medical professional's affidavit as these requirements simply do not apply to this civil rights case.

### B. Eighth or Fourteenth Amendment Violation

Plonsky pleads her claims under both the Eighth and Fourteenth Amendments to the Constitution. NaphCare contends that since Plonsky was a pretrial detainee rather than a post-conviction detainee, the Eighth Amendment does not apply. NaphCare is correct in this assertion. The Fourteenth Amendment rather than the Eighth Amendment applies to deliberate indifference claims brought by pretrial detainees. *Carnell v. Grimm*, 74 F.3d 977, 979 (9th Cir. 1996). Thus the Court dismisses the Eighth Amendment portion of Plonsky's deliberate indifference claim.

### C. Monell Liability

Finally, NaphCare contends that it should be dismissed from this case entirely as Plonsky failed to adequately plead a NaphCare policy, practice, or custom responsible for her constitutional injury. *Monell v. New York City Dept. of Soc. Serv.*, 436 U.S. 658, 694 (1978); *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). Under *Monell* and *Canton*, a municipality cannot be held liable under a theory of respondeat superior, *Monell*, 436 U.S. at 694, but only for its own policies, practices, or customs that inflict injury upon a plaintiff, *Canton*, 489 U.S. at 385.

Plonsky's allegations show a policy, practice, or custom sufficient to overcome a motion to dismiss. Here, Plonsky broke her face while in custody (and under the direction of a detention officer) and was taken to UMC for medical care. At UMC she was diagnosed with the above mentioned injuries and the doctors recommended surgery and other specific care. Plonsky was not given this treatment, at least not for a long time. Upon return to the CCDC, various NaphCare nurses and other employees wholly neglected her medical care for almost two weeks. This is not the type of thing that goes unnoticed by supervisors and policy making officials. Therefore, it is at least plausible that there was a custom, policy, or practice at NaphCare and the CCDC of deliberate indifference to serious medical needs. The Court need not turn its back to common sense when examining a complaint and motion to dismiss. At the least, Plonsky has plead sufficient factual allegations to give rise to discovery where further facts about NaphCare's policies, customs, and practices and who approved of them may be found.

## CONCLUSION

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED that NaphCare's Motion to Dismiss (#11) is GRANTED in part and DENIED in part as follows:

- The Eighth Amendment portion of Plonsky's claim is dismissed.
- All other claims remain.

Dated: July 8, 2011.

_____
**ROGER L. HUNT
United States District Judge**

AO 72
(Rev. 8/82)