# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| Lisa Plonsky,<br><br>    Plaintiff<br><br>    v.<br><br>Las Vegas Metropolitan Police Department, et al.,<br><br>    Defendants | Case No.: 2:11-cv-00026-JAD-PAL<br><br>**Order Granting Motion for Summary Judgment [Doc. 64]** |

This removed Section 1983 civil rights action arises from injuries Plaintiff Lisa Plonsky sustained while detained at the Clark County Detention Center. Through motion practice and stipulated dismissals, a number of claims and parties have been eliminated. *See* Docs. 27, 72. The remaining claim against Officer Cynthia Kelly is a Fourteenth Amendment deliberate-indifference claim. The remaining claims against the Las Vegas Metropolitan Police Department ("LVMPD") are a federal deliberate-indifference claim, a state negligence claim, and a state claim for negligent hiring retention, training, and supervision. Doc. 55. Kelly and LVMPD now move for summary judgment on all but the negligence claim. Doc. 64. The Court heard oral argument on December 20, 2013, granted the motion, and remanded the remaining negligence claim back to the state court. This written order memorializes those rulings. *See* Doc. 83.

**Facts**

Plonsky was booked into the Clark County Detention Center ("CCDC") on November 12, 2008. Following an incident at University Medical Center in which Plonsky attempted to grab an

1

officer's weapon, Plonsky was assigned a disciplinary housing cell in the 6J module and permitted just one hour each day outside her cell.

The disciplinary housing cells have air vents, and it is not unusual for detainees to obstruct the flow of air through these vents with wet tissue. The 6J officers' custom and practice was to provide long-handled brushes to inmates for removing this material from the vents.

Plonsky contends that her vents were blocked in this manner before she was placed in her cell but she was nevertheless instructed by Officer Kelly to remove the material from her vents. Though she cleared some of it, the material was unreachable unless she climbed on her sink, so she stopped short of completing the job. Plonsky was not given her next free time; she subjectively assumed she lost her free time because she did not remove all the tissue blocking her vent, but she did not confirm this with CCDC staff. Plonsky admits that no one told her she lost free time as a result of the vent blockage; all evidence in the record regarding the reason for that loss indicates she lost her free time for banging on her cell door. Regardless, Plonsky took it upon herself to climb on her sink to complete the tissue removal, fell to the ground, and sustained injuries to her face, wrist, breast, and shoulder.

Plonsky retained an expert who opines that this unfortunate accident occurred due to a failure in policy: the vents were not cleaned before Plonsky's assignment to the cell and she was not given a long-handled brush to clean them per custom. Nothing in the record suggests that LVMPD policymakers had knowledge of or involvement in the incident giving rise to Plonsky's claims.

## Discussion

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)). When considering the propriety of summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). If reasonable minds could differ on the material facts at issue, summary

judgment is not appropriate because the purpose of summary judgment is to avoid unnecessary trials when the facts are undisputed. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995); *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).

Once the moving party satisfies Rule 56 by demonstrating the absence of any genuine issue of material fact, the burden shifts to the party resisting summary judgment to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex*, 477 U.S. at 323. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Bank of Am. v. Orr*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted); he "must produce specific evidence, through affidavits or admissible discovery material, to show that" there is a sufficient evidentiary basis on which a reasonable fact finder could find in his favor. *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991); *Anderson,* 477 U.S. at 248–49. The Court may only consider properly authenticated, admissible evidence in deciding summary judgment. Fed. R. Civ. P. 56(c); *Orr*, 285 F.3d at 773–74.

## A. Deliberate Indifference Claim against Officer Kelly

As her first claim for relief, Plonsky alleges that Correctional Officer Kelly violated her Fourteenth Amendment right to not be placed "in a position of peril by ordering her to remove the tissue knowing it could cause a substantial risk of injury." Doc. 55 at 9.[1] In an effort to sustain her burden on summary judgment, Plonsky argues that "a reasonable jury could conclude that requiring an inmate to climb to a high surface, which is likely to be wet—namely, a sink—would create a substantial risk of serious harm because it is likely that an individual will fall and it is likely that falling from the sink to the hard floor will cause serious harm. The likelihood of serious harm is corroborated by the fact that Ms. Plonsky suffered an orbital fracture of her face and a distal radius fracture of her right arm." Doc. 69 at 10. In essence, Plaintiff's argument is that, because Plonsky sustained injuries from this activity, the court can simply presume that a constitutional violation must have occurred. The law, however, does not support this theory.

---

[1] The bulk of this claim alleged a deprivation of medical treatment, but that aspect of this claim was voluntarily dismissed. *See* Doc. 69 at 8, l.18–24.

"Deliberate indifference is a high legal standard." *Toguchi v. Chung,* 391 F.3d 1051, 1060 (9th Cir. 2004). Deliberate indifference entails something more than negligence or even gross negligence. *Id.* As the Ninth Circuit has explained:

> To determine whether the conditions of [a detainee's] confinement constituted cruel and unusual punishment, we must assess whether [the detainee] was deprived of the "minimal civilized measure of life's necessities." If so, a prison official may be held liable if he acted with "deliberate indifference" to a substantial risk of serious harm. Mere negligence is not sufficient to establish liability. Rather, the official's conduct must have been "wanton," which turns not upon its effect on the prisoner, but rather, upon the constraints facing the official.

*Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998) (quoting *Wilson v. Seiter,* 501 U.S. 294, 302–04 (1991); *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)) (internal citations omitted from block quotation); *see also Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1242–43 (9th Cir. 2010) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979); *Farmer v. Brennan*, 511 U.S. 823, 834 (1994)) (writing that "failure to prevent harm amounts to punishment where detention officials are deliberately indifferent"). In objective terms, deliberate indifference must be "sufficiently serious" and the "prison official must 'know of and disregard an excessive risk to inmate health or safety.'" *Farmer v. Brennan*, 511 U.S. 825, 834–35 (1994). This test's subjective prong requires that an "official must know[] of and disregard[] an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 835.

The need to climb on the toilet or sink to reach the vents may be inconvenient, but it is not in and of itself an excessive risk to inmate health or safety. *See, e.g.*, *Barbosa v. McCann,* 2009 WL 2913488, at *4 (N.D. Ill. Sept. 8, 2009) (citations omitted) (dismissing plaintiff's conditions-of-confinement claim premised upon the lack of a ladder for an upper bunk and reasoning that, "[a]lthough it is inconvenient for plaintiff to use the toilet and sink to climb to his bunk because there was no ladder . . . 'only those deprivations denying the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation."); *accord*, *McDaniel v. Walsh*, 2011 WL 489787 (C.D. Ill. Feb. 7, 2011) (granting summary judgment on claim that failure to provide inmate a ladder to climb onto his top bunk constituted deliberate indifference);

4

*White v. Rader*, 2010 WL 1744652 (M.D. La. Mar. 29, 2010) (rejecting claim that inmate's need to use a metal plate or his sink or toilet to reach his top bunk was deliberate indifference and reasoning, "in the absence of any allegation of knowledge or awareness on the defendants' part that the plaintiff was unable to negotiate the alleged hazardous condition, the plaintiff's claim sounds more in the nature of a claim of negligence which is not actionable under § 1983."); *Armstrong v. Terrebonne Parish Sheriff,* 2006 WL 1968887 (E.D. La., June 6, 2006) (holding that the United States Constitution does not require ladders for bunk beds and that, where there were a swivel chair and table to step on, there was "[a] reasonable means of getting into the top bunk, if the inmate would have taken reasonable care for his own safety").

The record is devoid of evidence that Officer Kelly knew or should have known she subjected Plaintiff to a high probability of serious harm[2] by telling Plonsky to clean the obstructed vents. Plonsky safely climbed up to remove some of the obstruction immediately after being instructed to clear it and did so without incident or injury. There is no evidence in the record that any inmate before Plonsky ever suffered injury while cleaning a vent. No reasonable jury could conclude that Kelly's failure to provide Plonsky with a long-handled brush to remove the blockage deprived her of the "minimal civilized measure of life's necessities," *Frost*, 152 F.3d at 1128, and the record does not suggest that Kelly acted in a "wanton" manner. Indeed, Plonsky's own testimony makes it clear that she made the unverified assumption that Kelly would not let her out for free time unless and until she climbed on the sink to remove the paper from her vent; thus, it was Plonsky's own imagination that caused her to take the ultimate action that resulted in her injuries.

---

[2] This is also akin to the slippery floor situation, which has been repeatedly held to fall short of establishing a constitutional claim. *See, e.g.*, *Jackson v. Arizona*, 885 F.2d 639, 641 (9th Cir. 1989), *superseded by statute on other grounds as stated in Lopez v. Smith*, 203 F.3d 1122, 1130–31 (9th Cir. 2000) (slippery floors, without more, "does not state even an arguable claim for cruel and unusual punishment."); *LeMaire v. Maass*, 12 F.3d 1444, 1457 (9th Cir. 1993) (shackling a dangerous inmate in the shower, even if he might fall, does not violate the Eighth Amendment); *Tunstall v. Rowe*, 478 F. Supp. 87 (N.D. Ill. 1979) (greasy staircase that caused prisoner to slip and fall did not violate the Eighth Amendment); *Robinson v. Cuyler*, 511 F. Supp. 161, 163 (E.D. Pa. 1981) (slippery kitchen floor did not inflict cruel and unusual punishment); *Snyder v. Blankenship*, 473 F. Supp. 1208, 1212 (W.D. Va. 1979) (leaking dishwasher that caused prisoner to slip and fall did not violate the Eighth Amendment).

Even when all reasonable inferences are drawn in Plonsky's favor,[3] she has failed to establish any genuine fact showing that Kelly knew of—let alone deliberately disregarded—"an excessive risk to" Plonsky's health and safety. *See Farmer*, 511 U.S. at 834; *Smolen v. Deloitte, Haskins & Sells*, 921 F.2d 959, 963 (9th Cir. 1990) (when opposing a motion for summary judgment, a plaintiff must "produce at least some significant probative evidence tending to support" the allegations in the complaint). Summary judgment in favor of Officer Kelly is warranted.

**B.      Deliberate Indifference Claim against LVMPD**

Plaintiff's civil rights claim against LVMPD under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), fares no better. Under *Monell*, a municipality cannot be held liable under a theory of respondeat superior, but only for its own policies, practices, or customs that inflict injury upon a plaintiff. *Id.* at 694; *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). The policy itself must be "the moving force of the constitutional violation." *Monell*, 436 U.S. at 690–91, 695. *Monell* requires courts to "distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479–80 (1986) (emphases in original). A municipal government may be liable through formal policies that violate constitutional rights when (1) an act was committed pursuant to a formal government policy or longstanding practice of custom that constitutes standard operating procedure; (2) the challenged act was committed by an official policymaker, rendering the act one of official government policy; or (3) a policymaking official ratifies a subordinate's constitutional violation. *Gillette v. Delmore*, 979 F.2d 1342, 1346–47 (9th Cir. 1992) (citations omitted); *Pembaur*, 475 U.S. at 480–81; *Monell*, 436 U.S. at 690–691.

Plonsky's *Monell* claim alleges that LVMPD violated "Plaintiff's decedent's" civil rights through "custom, policy and usage . . . to deprive Plaintiff's decedent and others similarly situated of the rights, privileges and immunities secured by the United States Constitution and the laws of the

---

[3] On summary judgment, a court must view all evidence and any inferences therefrom in the light most favorable to the nonmoving party. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996).

United States of America . . . " Doc. 55 at 9.[4]  Plonsky clarifies that her municipal liability claim is based on two policy theories: (1) "LVMPD had a policy or custom of violating pretrial detainee's constitutional rights based upon the practice of requiring those in their custody to climb upon high surfaces to remove obstructions from their vents" and (2) LVMPD apparently "ratified the unconstitutional conduct of Officer Kelley" [sic] because she was not punished.  Doc. 69 at 10–12.

There is no evidence that Plonsky's injuries were the result of an official policy.  Indeed, Plaintiff's own expert witness—whom Plaintiff touts as "intimately familiar with the policies, practices, and procedures of LVMPD"—opines that the incident was the result of Defendants' *failure to follow their operating procedures*.  Doc. 69 at 5, l.16–24.  Thus, even Plaintiff's own evidence belies the theory that her injuries were the result of the implementation of a policy or custom.  Plaintiff's theory that LVMPD ratified unconstitutional conduct fails for the same reason that her deliberate-indifference claim fails against Kelly: the evidence does not support a constitutional violation.  *See supra* § A.  "Conclusory allegations of official participation in civil rights violations are not sufficient to withstand" summary judgment.  *Ivey v. Bd. of Regents of Univ. of Alaska,* 673 F.2d 266, 268 (9th Cir. 1982).  With no evidence that an LVMPD policy, practice, or custom showed deliberate indifference to Plonsky's rights—or was the moving force behind any constitutional tort against her—LVMPD is entitled to summary judgment on Plonsky's 1983 claim.

**C.    Negligent Hiring, Retention, Training, and Supervision Claim against LVMPD**

Finally, LVMPD moves for summary judgment on Plaintiff's state-law claim for negligent hiring, retention, training, and supervision, arguing that the record is barren of any evidence to support this theory and, regardless, that LVMPD enjoys discretionary-function immunity for decisions and actions of this type.  Doc. 64.  In response, Plonsky muses:

> Assessing the facts here in the light most favorable to Plaintiff, a reasonable juror could find that LVMPD had acted negligently in hiring, training, supervising, investigating, and disciplining officers because the Defendants have denied that Officer Kelly was aware that requiring Ms. Plonsky to climb on her sink posed a significant risk of serious harm towards Ms. Plonsky. Consequently, a reasonable

---

[4] The identification of the Plaintiff in this manner appears to be an error as there is no "decedent" or class action allegation in this case.

7

>juror could determine that LVMPD failed to adequately train its employees. Moreover, a juror could also determine that LVMPD failed to adequately supervise its employees based upon the fact that its corrections officers ordered a pretrial detainee to significant risk of serious harm and were not prevented from doing so by supervisory personnel. Additionally, a reasonable juror could also determine that the fact hat no one was disciplined as a result of the incident involving Ms. Plonsky demonstrates that LVMPD negligently failed to either investigate or discipline its officers. Each of these questions require a factual determination to be made by a jury, thereby precluding summary judgment.

Doc. 69 at 15.

Although these hypotheticals may have been sufficient to defeat a motion to dismiss, they are an inadequate barrier to summary judgment. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("[a] summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data."); *Old Republic Ins. Co. v. Jensen*, 276 F. Supp. 2d 1097, 1105 (D. Nev. 2003) (quoting *Barmettler v. Reno Air. Inc.*, 956 P.2d 1382, 1385 (1998)) (citations omitted) (observing that "it is well settled that the nonmoving party 'may not build a case on the gossamer threads of whimsy, speculation, and conjecture.'"). The record in this case contains zero evidence of any systemic inadequacy in hiring, training, or supervision—and it yields no evidence that, if there were such an inadequacy, LVMPD policy-making officials knew or should have known about it. As there is no evidence that Defendant LVMPD breached any duty owed to Plaintiff in regard to hiring, training, or supervising its officers, summary judgment is required on Plaintiff's third claim for relief.

Even if there were any evidence that Plonsky's injuries resulted from a failure to hire, train, or supervise, LVMPD would be immune from liability for that claim as Plonsky pleads it. The actions of state actors are entitled to discretionary-act immunity if their decision (1) involves an element of individual judgment or choice and (2) is based on considerations of social, economic, or political policy. *Martinez v. Maruszczak*, 168 P.3d 720, 729 (2007). "Decisions at all levels of government, including frequent or routine decisions, may be protected by discretionary-act immunity, if the decisions require analysis of government policy concerns." *Id.* The Nevada Supreme Court has "determined federal jurisprudence to be useful in analyzing claims of immunity

8

under NRS 41.032(2)." *Butler ex rel. Biller v. Bayer*, 168 P.3d 1055, 1066 n.50 (2007) (citing *Martinez v. Maruszczak*, 168 P.3d 720, 727 (2007)) (citation omitted).

Under longstanding federal law, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train" employees regarding "their legal duty to avoid violating citizens' rights." *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011) (quoting *Okla. City v. Tuttle*, 471 U.S. 808, 822–23 (1985) (plurality opinion)). The Ninth Circuit has held that "decisions relating to the hiring, training, and supervision of employees usually involve policy judgments of the type Congress intended the discretionary function exception to shield." *Vickers v. United States*, 228 F.3d 944, 950 (9th Cir. 2000) (citations omitted). Moreover, "negligence in performing discretionary functions is not actionable" under the Federal Tort Claims Act—and "the challenged decision need not actually be grounded in policy considerations so long as it is, by its nature, susceptible to a policy analysis." *Id.* 950 –51 (citing *United States v. S.A. Empresa de Viacao Aerea Rio Grandense*, 467 U.S. 797, 811 (1984)) (quoting *Nurse v. United States*, 226 F.3d 996, 1001 (9th Cir. 2000)) (citations omitted) (internal quotation marks omitted).

Plaintiff's negligent hiring, retention, training, and supervision claim alleges that LVMPD employees acted "pursuant to a *de facto* policy of the Defendant LVMPD [and] CCDC . . . to provide inadequate supervision" and that "the supervisory and policy-making officials of the named Defendnats as a matter of policy have not . . . effectively trained staff . . . " Doc. 55 at 12. This claim is undeniably framed in a way that triggers discretionary immunity because it specifically states that the supervision and training challenged by this claim is grounded in policy decisions. Accordingly, even if Plaintiff had identified some evidence to support this claim and survive summary judgment, this claim should be dismissed because the LVMPD is immune from it as pled.

**D.    The Court Exercises Its Discretion to Remand This Case**

Pursuant to 28 U.S.C. § 1367, federal district courts have supplemental jurisdiction over civil claims that are so related to a case's original-jurisdiction claims that they form part of the same case or controversy. 28 U.S.C. § 1367(a) (2006). Once judicial power exists under Section 1367(a), retention of supplemental jurisdiction over state law claims under Section 1367(c) is discretionary.

*Acri v. Varian Assocs.*, 114 F.3d 999, 1001 (9th Cir. 1997) (citations omitted).  The court may decline to exercise supplemental jurisdiction over a claim if "the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c).  The entry of summary judgment on Plonsky's federal claims leaves only a single state law negligence claim, and no party objects to this case being remanded back to the state court for adjudication of that claim.  Accordingly, the Court declines to exercise supplemental jurisdiction over the state claim and remands this case back to Nevada's Eighth Judicial District Court.

## Conclusion

Accordingly, and with good cause appearing,

It is hereby ORDERED that Defendants' Motion for Summary Judgment **[Doc. 64] is GRANTED,** leaving only Plaintiff's Second Cause of Action for Negligence under state law.

Accordingly, this case is further **REMANDED** to the Eighth Judicial District Court for resolution of the remaining state-law claim.

DATED February 5, 2014.

_____
Jennifer A. Dorsey
United States District Judge